## Glasgow Electric Light & Ice Company v. Clark's Administratrix.

(Decided May 6, 1914)

### Appeal from Barren Circuit Court.

1. Trial—Instructions—Instructions Already Given.—Requested in-
structions substantially covered by those already given, are prop-
erly refused.
2. Trial—Argument of Counsel.—It was not error for the court to
deny defendant's motion to discharge the jury because of the use
of certain language by counsel for plaintiff in argument to the
jury, where the court admonished the jury to disregard same.
3. Electricity—Defects, Acts and Omissions Causing Injury.—Where
an electric light company in installing electric power in a mill,
erected a pole near said mill in such negligent manner as to
permit it to lean out of its original position and thereby to charge
a guy wire bracing said pole, with electricity, it is responsible
in damages for the death of one who came in contact with said
guy wire.

BARRETT, ALLEN & ATTKISSON, E. R. ATTKISSON and
BAIRD & RICHARDSON for appellant.

ALLEN SANDIDGE, C. H. HATCHETT and PORTER & SAN-
DIDGE for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

Mattie B. Clark, as administratrix of the estate of
Selby Clark, instituted this action in the Barren Circuit
Court against the Glasgow Electric Light & Ice Com-
pany, to recover damages for the death of her husband,
who was killed by coming in contact with a wire charged
with electricity. The jury returned a verdict for plain-
tiff in the sum of six thousand dollars; and defendant
appeals.

The Glasgow Milling Company, a corporation, was
owned jointly by the decedent and his two brothers.
Shortly before the death of Clark, the Milling Company
arranged with the Glasgow Electric Light & Ice Com-
pany for the installation of an electric motor and the fur-
nishing of electric power to operate the mill.

Appellant company thereupon extended its power line to the plant of the milling company, and in doing so, it erected a pole near the mill and braced the same with guy wires, one of which was fastened to an old and partly-decayed chestnut post; and wires for the transmission of the electric current were extended into the mill. About a week after the installation of this pole, and wires, Selby Clark was killed. The motor had not yet arrived, but current was turned in on the line.

On his arrival at the mill on the morning of his death, Clark was informed by the engineer that the old chestnut post above mentioned was burning. He went out to look at it, accompanied by the engineer, and while inspecting it, his hand came in contact with the guy wire attached to the burning post, and he was instantly killed.

This guy wire, by contact with which he was killed, was connected with the other guy wire by which the transmission pole was braced; and in the interval between the erection of said pole and Clark's death, the pole had leaned out of its original position, causing the guy wire to come in contact with the wire carrying the current, and the insulation on the wire carrying the current had become worn so as to permit the current to be transmitted to the guy wire on that side of the post, and of course to the guy wire with which Clark came in contact. The Light Company had exclusive supervision and control of the installation of the motor, pole and wires; and plaintiff alleged, first, that the pole was not properly erected and that this caused it to lean out of its original position and thereby permitted the guy wire to become charged with the electric current; and second, that the manager of appellant company, after the installation of the pole and wires informed Clark that the current had not been and would not be turned on the wires until the motor arrived; and proof was produced by appellee on both of these allegations sufficient to authorize an instruction thereon.

The court instructed the jury on negligence in the installation of the pole and wires; and also told the jury that if the defendant company informed decedent that the wires were not and would not be charged with electricity, and thereafter, without giving notice to decedent, permitted said wires to become charged with electricity, they should find for plaintiff.

Appellant company then asked the court to instruct the jury that if it or its servants informed decedent that

the electric current was turned in on said wires, after having informed him that it was not and would not be turned on until the motor arrived, they should find for defendant; or, if plaintiff saw, or could have discovered by the exercise of ordinary care that the current was on said wires, they should find for the defendant. And, of the failure of the court to so instruct the jury, appellant company complains.

The instruction which was given by the court on this phase of the case required the jury before they could find for plaintiff, to believe that the current was turned on without giving notice to Clark, after having informed him that it was not and would not be turned on until the motor arrived; while the instruction asked by appellant company required the jury to find for defendant if the current was turned on after giving such notice. It was merely the converse of the instruction given by the court, and appellant company's substantial rights were not on this account prejudiced by the refusal to give the instruction asked. That part of the instruction asked having reference to the negligence of decedent, was already covered by a proper instruction on contributory negligence.

2. Appellant company also complains of language used by counsel for plaintiff in argument to the jury. Plaintiff, the widow of Selby Clark, was present at this argument; and counsel used the following language: "The third is, if you find for plaintiff, the amount that you should give her as compensation for the loss of her husband." The court sustained an objection to this and informed the jury that the true criterion of damages was that stated in the instructions, and directed the jury to disregard the language used. Counsel also said in argument, "Selby Clark is now silent in death. Nobody knows what he said but Selby Clark, and how could we prove it? It is evidence that contradicts itself to this jury, and speaks in mighty terms to this jury, that is, that Selby Clark walked out there, a young man, with this good woman as his wife, yes, good-looking woman, with every reason to live; yes, had a wife, and this is his wife, here before the jury."

Appellant company's counsel objected to this language, and asked the court to discharge the jury. The court sustained the objection and admonished the jury to disregard the language used, but refused to discharge

the jury; and of this ruling of the court appellant company complains.

The fact that the plaintiff was the widow of Selby Clark was in evidence; and while comment upon her personal appearance was superfluous, under the circumstances as the court sustained defendant's objection and admonished the jury to disregard the language, we do not think that the appellant company was prejudiced by the ruling of the court in denying its motion to discharge the jury.

The judgment is affirmed.